USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/28/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SINCERE SMITH,

                Plaintiff,

  -against-

CORDERO, et al.,

                Defendants.

No. 21 Civ. 2712 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

    Sincere Smith ("Plaintiff") commenced this action *pro se* against Cordero, Udayan, Robinson, Davis, Jarvis, Otaiza, Rodriguez, and Annucci (collectively, "Defendants"), current and former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), asserting federal claims for excessive force, failure to intervene, retaliation, and violation of procedural due process right, as well as a state law claim for intentional infliction of emotional distress. (Amended Complaint ("Am. Compl."), ECF No. 10, at 2.)

    Presently before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims (the "Motion", ECF No. 86). For the following reasons, the Court GRANTS Defendants' Motion.

1

**BACKGROUND**

**I.     Factual Background**

The parties have submitted briefs, an uncontested statement of material facts pursuant to Local Civil Rule 56.1,[1] and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

Plaintiff was in the custody of DOCCS on June 13, 2019 at Sing Sing Correctional Facility ("Sing Sing"). (Defs.' 56.1 ¶¶ 1-2.) On June 13, 2019, Defendant Officer Cordero issued Plaintiff a misbehavior report following an incident in the Visit Room at Sing Sing. (*Id.* ¶ 3.) The parties dispute the facts underlying the incident in the Visit Room. According to Plaintiff, while he and another incarcerated individual, Mr. Alvarado, were waiting to be searched following a visit, Officer Cordero directed them to get on the wall for a frisk because he smelled marijuana. (Am. Compl. ¶ 4.) After being patted down, Plaintiff commented, "this officer must be bored" to the other individuals. (*Id.*) In response, Plaintiff claims Officer Cordero placed Plaintiff in handcuffs, slammed him on the ground, and beat him. (*Id.* ¶¶ 4-8.) Plaintiff claims Defendant Officers Udayan, Robinson, Davis, and Jarvis watched as he was beaten and did not intervene. (*Id.* ¶¶ 8-9.)

According to Defendants, Plaintiff and Alvarado began fighting while waiting to be searched after a visit. (*See* Declaration of Kathryn Martin in Supp. ff Motion ("Martin Decl."), Ex. C.) When the individuals refused orders to stop fighting, Officer Cordero deployed chemical agent to the faces of both individuals. (*Id.*) The chemical agent had the desired effect on Alvarado, but not on Plaintiff who then struck Officer Cordero in the chest. (*Id.*) Officer Cordero then used a

---

[1] Defendants filed a statement of material facts ("Defs.' 56.1, ECF No. 86). Plaintiff did not file a statement of material facts, but merely stated that he does not contest any portion of Defendants' statement. (*See* ECF No. 79.) As a result, the Court deems the facts contained in Defendants' statement undisputed.

body hold to force Plaintiff to the ground and forcibly placed him in handcuffs. (*See* Martin Decl. Ex. D.) Officers Udayan, Robinson, Davis, and Jarvis submitted written reports regarding the incident. (Defs. 56.1 ¶ 4.) Defendant Hearing Officer Otaiza was the hearing officer assigned to adjudicate the misbehavior report. (*Id*. ¶ 5.) Plaintiff requested incarcerated individual Alvarado be called to testify at the hearing, but Alvarado refused. (*Id*. ¶¶ 6-7.) Hearing Officer Otaiza informed Plaintiff during the hearing that Alvarado refused to testify. (*Id*. ¶ 8.)

Plaintiff claims he submitted a grievance regarding the incident, (*see* Martin Decl., Ex. B at 88), to which Inmate Grievance Program Supervisor Quandera Quick ("IGPS Quick") responded via memorandum, (Pltf.'s Sur-Reply Ex. B). Plaintiff then appealed IGPS Quick's response to the superintendent (the "Superintendent") of Sing Sing. (*See* Martin Decl., Ex. B at 88.) Defendants dispute Plaintiff submitted a grievance related to the incident, but the parties agree that Plaintiff did not appeal any alleged grievance following his appeal to the Superintendent to the Central Office Review Committee ("CORC"). (*See* Defs.' 56.1 ¶ 9.)

## II. Procedural History

On March 29, 2021, Plaintiff commenced the present action pursuant to 42 U.S.C. § 1983. (ECF No. 2.) On June 24, 2021, Plaintiff filed an Amended Complaint. (ECF No. 10.) Defendants filed a motion for summary judgment on all claims, as well as a memorandum of law ("Defs.' MOL", ECF No. 86) and reply ("Defs.' Reply", ECF No. 88) in support thereof. In response, Plaintiff opposed Defendants' Motion. ("Pltf.'s Opp.", ECF No. 87.) Plaintiff also filed a sur-reply in further opposition to Defendants' Motion. ("Pltf.'s Sur-Reply", ECF No. 90.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of

3

law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## DISCUSSION

### I.     Administrative Exhaustion

The Prison Litigation Reform Act (the "PLRA") prohibits a prisoner from bringing an action under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). For prisoners confined by DOCCS, the relevant administrative remedy is

the Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701.5; *Garcia v. Heath*, 74 F.4th 44, 46 (2nd. Cir. 2023). The IGP calls for prisoners to generally follow a grievance procedure comprised of three steps: (1) filing a complaint to be resolved by the Inmate Grievance Resolution Committee ("IGRC"); (2) appealing an adverse decision by the IGRC to the superintendent of the facility; and (3) appealing any further adverse decision by the superintendent to CORC. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, §§ 701.1(c) (setting out complaint filing and appeals framework), 701.5 ("Procedure").

Under the IGP, an inmate must exhaust all available administrative remedies by completing all three steps before filing suit in federal court. "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Ortiz v. Annucci*, 2019 WL 1438006, at *8 (S.D.N.Y. 2019) (quoting *Laguna v. Kwan*, No. 13-cv-7079 (VB), 2015 WL 872366, at *3 (S.D.N.Y. Jan. 28, 2015)). "[W]hen a prisoner does not properly exhaust his administrative remedies before filing suit, the action *must* be dismissed," *Terry v. Hulse*, 2018 WL 4682784, at *7 (S.D.N.Y. 2018) (quoting *Mateo v. Alexander*, No. 08-CV-8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010)) (emphasis in original), because the PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion," *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Defendants bear the burden of proving that Plaintiff failed to exhaust available administrative remedies. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.") (alteration, citations, and internal quotation marks omitted).

Here, Defendants argue that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the PLRA. The Court agrees.

Plaintiff claims he properly filed a grievance with the IGRC at Sing Sing regarding the June 2019 use of force incident. (Am. Compl. at 6.) After receiving an unsatisfactory response from IGPS Quick, Plaintiff appealed "this decision to the [S]uperintendent" via letter, but the Superintendent, "completely ignored [Plaintiff]." (*Id.*) Plaintiff did not take any subsequent action regarding his grievance. At this point, Plaintiff had completed the first two steps of the IGP. It is undisputed, however, that Plaintiff did not complete the third and final step of the IGP: appealing the Superintendent's decision (or lack thereof) to CORC. (*See* Defs.' 56.1 ¶ 9; Decl. of Rachael Seguin in Supp. of Motion ¶ 10.) This failure is fatal to Plaintiff's claims.

The law is well-settled in this Circuit that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies. *See, e.g.*, *Taylor v. N.Y.C. Dep't of Corr.*, 849 F. App'x 5, 9 (2d Cir. 2021); *Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018) (summary order); *Colson v. Mingo*, 2024 WL 1018582, at *9 (S.D.N.Y. 2024); *McRae v. Cordero*, 2018 WL 3611964, at *4 (S.D.N.Y. 2018); *Mena v. City of New York*, 2016 WL 3948100, at *3 (S.D.N.Y. 2016); *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015). "Thus, if a plaintiff does not receive a response…he normally must file an appeal…with the CORC to fully exhaust his grievance. Indeed, the IGP explicitly states that 'matters not decided within the time limits may be appealed to the next step.'" *Shaw v. Ortiz*, 2016 WL 7410722, at *3 (S.D.N.Y. 2016) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)). Here, Plaintiff took no further action after he failed to receive a response from the Superintendent. Consequently, Plaintiff did not exhaust the technically available administrative remedy at the time he commenced the instant action.

6

Administrative exhaustion under the PLRA "is mandatory" prior to filing suit, provided that the remedies outlined in the IGP are indeed "'available' to the prisoner." *See Ross*, 136 S.Ct. at 1856. Remedies are unavailable only if (1) the grievance process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the grievance process is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See Cicio*, 714 Fed. Appx. at 97 (quoting *Ross*, 136 S.Ct. at 1859–60). Plaintiff's case does not fall into any of these exceptions. *First*, Plaintiff does not allege or present evidence that Sing Sing "officers [are] unable to or consistently unwilling to provide any relief to aggrieved inmates" such that the administrative grievance procedure "operates as a dead end." *Id*. "In other words, Plaintiff does not show that the prison's administrative process precludes the 'possibility of some relief' or that 'no such potential exists.'" *See Senear v. Mininni*, 2023 WL 4422805, at *5 (S.D.N.Y., 2023) (citation omitted). Even if "[P]laintiff's initial grievance received no response," as Plaintiff alleges here (Am. Compl. at 6), "this alone is insufficient to show that the [IGP] acted as a mere dead end." *Mena,* 2016 WL 3948100, at *4. Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at Sing Sing are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. *Second*, Plaintiff has not pointed to any evidence that the IGP was "so opaque that it [became], practically speaking, incapable of use." *See Cicio*, 714 Fed. Appx. at 97. The IGP "expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review." *Mena*, 2016 WL 3948100, at *5.

Plaintiff appears to make a case in his opposition papers for the third exception to apply, namely that prison administrators, like IGPS Quick, prevented him from taking advantage of the IGP by "tampering" with his grievance and using "misrepresentation [and] intimidation" to make the IGP "incapable of use." (Pltf.'s Opp. at 1.) Plaintiff offers no support for the conclusory assertion that IGPS Quick tampered with and "intercepted" his grievance (*id.* at 5), except to cite to a district court decision in which there was "insufficient evidence for the Court to make a factual finding that [p]laintiff's grievances were intentionally destroyed." *See Jenkins v. Cordero*, No. 17 CIV. 1592 (JCM), 2019 WL 2121655, at *5 (S.D.N.Y. May 15, 2019). "Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact." *See Engles v. Jones*, No. 13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) (granting summary judgment to defendants for failure to exhaust where defendants demonstrated through admissible evidence that there was no record of the plaintiff filing his grievance and where the plaintiff merely alleged without any documentary support that his grievance was lost or destroyed); *see also Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) (holding that "an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement"). In fact, the exhibits which Plaintiff attaches to his own sur-reply belie his accusations. They make clear that Plaintiff was able to file an initial grievance, (Pltf.'s Sur-Reply Ex. A), which IGPS Quick responded to via memorandum eight days later (*id.* Ex. B). The memorandum was neither "intimidating" nor did it "misrepresent[] the program" (Pltf's Sur-Reply at 1) – in fact, all the memorandum states is that "[e]very effort is made to ensure all inmates are safe and secure" and that body cameras and facility cameras, which Plaintiff requested the installation of as part of his initial grievance, would "be available if and when [DOCCS] chooses to do so" (Pltf.'s Sur-Reply Ex. B). The memorandum does not mention

8

the IGP, or anything about Plaintiff's ability to file and/or appeal grievances. Moreover, Plaintiff clearly was not deterred by the supposedly "intimidating" memorandum (Pltf's Sur-Reply at 1) considering he subsequently "attempted to appeal this decision to the Superintendent" (Am. Compl. at 6). After receiving no response from the Superintendent, Plaintiff failed to take any further action. His sur-reply suggests that he may have been under the misimpression that he could not "appeal an unanswered grievance" and thus concluded that the grievance may have gone unanswered because it was "unfiled" by IGPS Quick. (*See* Pltf's Sur-Reply at 1.) Plaintiff's potential misunderstanding of the otherwise clear IGP, which "expressly guides inmates in Plaintiff's position," *Mena*, 2016 WL 3948100, at *5, does not excuse his failure to appeal his grievance. Even "[c]onsidering Plaintiff's statements," against IGPS Quick, "which 'stand alone and unsupported,'…the Court concludes that no exception to the exhaustion requirement applies." *See Davis v. Grant*, 2019 WL 498277, at *10 (S.D.N.Y. 2019) (citation omitted).

"Even while granting Plaintiff….every conceivable benefit of the doubt to which a *pro se* litigant is entitled, there is no genuine issue of material fact on the instant [M]otion." *See Jackson v. Jackson*, 2021 WL 981849, at *5 (S.D.N.Y. 2021). Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGP. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendants' motion for summary judgment on all of Plaintiff's federal claims is granted.

Because the time for Plaintiff to exhaust his federal claims against Defendants has elapsed, any subsequent attempt to exhaust would be futile. *See Berry v. Kerik,* 366 F.3d 85, 86 (2d. Cir. 2004). As a result, the Court dismisses his federal claims with prejudice. *See id.*; *see also Hilbert v. Fischer*, No. 12 Civ. 3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013).

II.     **Intentional Infliction of Emotional Distress**

Plaintiff asserts a claim under New York state law for intentional infliction of emotional distress. (Am. Compl. at 2.) New York Correction Law § 24 ("Section 24") prevents federal suit on state-law claims against correctional employees in their individual or personal capacities. "The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-07977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015)); *see also Curry v. Kim*, No. 22-CV-04127 (PMH), 2023 WL 7625859, at *4 (S.D.N.Y. Nov. 14, 2023) (dismissing claims pursuant to Section 24); *Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law ... must be dismissed for lack of subject matter jurisdiction."). Because Section 24 bars state law claims against all individual Defendants, the Court grants Defendants summary judgment with respect to Plaintiff's intentional infliction of emotional distress claim. *See Gordon v. City of New York*, No. 05-0351-PR, 2005 WL 2899863, at *1 (2d Cir. Nov. 3, 2005); *Gill v. Tuttle*, 93 F. App'x 301, 302 (2d Cir. 2004).

Because the Court dismisses Plaintiff's state law claim pursuant to Section 24, this dismissal is without prejudice to refile in state court. *See Mann v. Martingano*, No. 919CV0478LEKTWD, 2020 WL 871181, at *1 (N.D.N.Y. Feb. 21, 2020).

## CONCLUSION

Defendants' Motion for summary judgment is GRANTED and all of Plaintiff's federal claims are dismissed with prejudice. Plaintiff's state law claim for intentional infliction of emotional distress is dismissed without prejudice to refile in state court. The Clerk of Court is kindly directed to terminate the motion at ECF No. 86, enter judgment in favor of Defendants, and

close the case. The Clerk of Court is further directed to mail a copy of this Order to *pro se* Plaintiff at Plaintiff's address listed on ECF and to show service on the docket.

| | |
|---|---|
| Dated: May 28, 2024<br>White Plains, New York | SO ORDERED:<br><br>_____<br>NELSON S. ROMÁN<br>United States District Judge |